John H. WILSON, Appellant,

v.

UNITED STATES, Appellee.

No. 96–CF–1365.

District of Columbia Court of Appeals.

Argued Feb. 12, 1998.
Decided Feb. 19, 1998.*
Filed May 7, 1998.

Steven R. Kiersh, appointed by this court, for appellant.

Mary Lou Leary, United States Attorney, with whom John R. Fisher, Thomas C. Black, Robert A. Feitel, David L. Smith and Renate D. Staley, Assistant United States Attorneys, were on the brief, for appellee.

Before WAGNER, Chief Judge, and REID, Associate Judge, and KERN, Senior Judge.

PER CURIAM:

After a jury trial, Appellant John H. Wilson was convicted of one count of second degree murder while armed, in violation of D.C.Code §§ 22–2403, –3202 (1996).[1] He filed a timely appeal. He contends that the trial court erred by giving a jury instruction on second degree murder as a lesser included offense where the government tried the mat-

---

* The decision in this case was originally released as a Memorandum Opinion and Judgment on February 19, 1998. It is now being published by direction of the court.

1. Wilson was charged by indictment with one count of first degree murder while armed, in violation of D.C.Code §§ 22–2401, and –3202 (1996); one count of rape while armed, in violation of D.C.Code §§ 22–2801, and –3202; one

count of felony murder while armed, in violation of D.C.Code §§ 22–2401, –3202; and one count of carrying a dangerous weapon, in violation of D.C.Code § 3204(a). The jury acquitted him of these charges.

For the second degree murder conviction, Wilson was sentenced to serve fifteen years to life in prison.

ter as a first degree murder case and where "the facts ... demonstrated that there was no rational basis for a finding of second-degree murder...." He also argues he should have been allowed to introduce third-party culpability evidence. We affirm.

## FACTUAL SUMMARY

On September 13, 1994, a United States Park Service employee found the nude body of Elise Clyburn lying face down in blood and splattered brain matter, in a wooded area of Rock Creek Park behind a parking lot at Grove 10. There was evidence that she had been stabbed twice in the face with such force as to penetrate her skull and brain. In addition, she suffered great trauma to the back of her head consisting of eleven lacerations between four and eight inches long which severed her scalp from her skull. There were several abrasions and lacerations to the inner lining of her rectum. Semen in her vaginal area matched Wilson's DNA profile. Some of Ms. Clyburn's clothes, which were soaked in blood, were strewn nearby in the grass. A "metal pipe fitting" and piece of wood covered in blood were lying three feet from her head.

The government established that on the night of Ms. Clyburn's murder, Wilson and Ms. Clyburn had been arguing.[2] Wilson was seen leading Ms. Clyburn out of the apartment, and was heard stating to her, "You will find out when you get dead" in response to a question she asked. Wilson was an extremely jealous boyfriend who monitored Ms. Clyburn's calls, destroyed her phone book, and became very angry when she was friendly with other men. It was also shown that an intimate relationship between Wilson and Ms. Clyburn had ceased due to Ms. Clyburn's feeling that Wilson was sleeping with other women.[3]

A friend, Georgia Kusi, testified that hours before the murder, she saw Wilson inside an apartment building on Lamont Street, "in a rage" and yelling loudly at another man. Ms. Kusi saw Ms. Clyburn sitting alone in Wilson's car, and described her as "not herself." When Wilson returned to the apartment on Euclid Street later that night, Darlene Adams claimed that Ms. Clyburn was not with him, and that he asked her to wash out his blood stained shirt. Although boots he had worn that night contained blood, it matched neither his DNA profile nor that of Ms. Clyburn. Wilson said he had been in a fight with a deaf man earlier that evening, and warned Ms. Adams not to talk to any police officers or lawyers.

Two weeks before the murder took place, Ms. Clyburn phoned the police in order to have Wilson and Ms. Adams removed from the apartment. When the police officer arrived, Wilson was heard calling Ms. Clyburn names and had to be restrained. Mr. Recee Cain, an associate of Wilson, testified that one day when he was riding in Wilson's car, he saw a metal pipe. He claims that Wilson "got angry" when someone cut him off in traffic, and in response, "picked up a piece of metal [pipe]." Mr. Cain recalled that the pipe had a wooden handle on it, but he could not identify it as the same metal pipe that was used in the murder of Ms. Clyburn.

Wilson did not introduce testimonial evidence during his trial, but did file a pre-trial motion to introduce evidence that another assault had occurred in Rock Creek Park three days prior to Ms. Clyburn's attack. He wanted to use this evidence to suggest that the person responsible for that assault might also be the person responsible for the murder of Ms. Clyburn. The trial court denied Wilson's motion. He seeks review of that ruling. At the end of the trial, the government requested that the trial court give the jury an instruction on second degree

---

**2.** Appellant Wilson lived on Euclid Street in a one bedroom apartment with Elise Clyburn, Darlene Adams, and four children. Elise Clyburn was Wilson's girlfriend and shared the bedroom with him. Darlene Adams, the mother of Wilson's children, slept in the living room with the kids. Both Wilson and Ms. Adams were hearing-impaired, and often communicated through sign language, although Wilson had a hearing aid and could speak.

**3.** In the months before her murder, Ms. Clyburn had gained substantial weight, and told Wilson that she could not have intimate relations with him because she was pregnant, even though she was not.

murder as a lesser included offense. The defense objected on the ground that "there's no evidence to support a second-degree murder in this case. And all we're doing is inviting the jury to compromise." After much discussion and debate, the trial court granted the government's request to instruct the jury on second degree murder. Wilson appeals the trial court's decision.

## ANALYSIS

### I.

Wilson contends that the trial court erred when it gave the jury an instruction on second degree murder as a lesser included offense. He maintains that the government prosecuted him under first degree murder "present[ing] evidence of motive suggesting a purposeful and planned killing," and therefore, the jury had no rational basis upon which to convict him of second degree murder.

■ "As we have said previously, [t]o justify a lesser included offense instruction, there must be evidence to support a finding of guilt on the lesser offense." *Bright v. United States*, 698 A.2d 450, 457 (D.C.1997) (internal quotations omitted). "The instruction must be given when 'the conclusion as to lesser offense is fairly inferable from the evidence, including a reconstruction of events gained by accepting the testimony of one or more witnesses only in part.'" *Shuler v. United States*, 677 A.2d 1014, 1017 (D.C. 1996). Thus, the evidence required to support a second degree instruction "is a 'minimal one; it means any evidence ... however weak.'" *Id.* "Moreover, when counsel requests a lesser included offense instruction, 'it should be freely given.'" *Nelson v. United States*, 601 A.2d 582, 594 (D.C.1991) (quoting *Wright v. United States*, 505 A.2d 470, 472 (D.C.1986)).

■ Here, the evidence was sufficient to support a second degree murder instruction. It is true, as Wilson points out, that the government built its case on the "long stand-

ing jealousy" which Wilson harbored toward Ms. Clyburn.[4] However, we agree with the government that proof of jealousy does not necessarily show that Wilson's actions were calculated or planned. In fact, there was evidence that Wilson had a volatile temperament and was quick to anger. Thus, we conclude that "[v]arious inferences as to premeditation or the lack thereof could reasonably be drawn from the circumstances of [Ms. Clyburn's] death." *Henderson v. United States*, 678 A.2d 20, 21 n. 2 (D.C.1996). Because the showing to support a lesser included instruction is a "minimal one," and may be based upon evidence "however weak," we see no error in the trial court's decision to give a second degree murder instruction in this case. *See Boykins v. United States*, 702 A.2d 1242, 1250 (D.C. 1997); *Shuler, supra*, 677 A.2d at 1017.

### II.

■ Wilson also contends that the trial court committed error when it denied his request to introduce evidence to suggest that a third-party might have committed the murder. We disagree. "[A] trial court ruling that certain evidence is not relevant or probative is a highly discretionary decision which will be upset on appeal only upon a showing of grave abuse." *Gethers v. United States*, 684 A.2d 1266, 1271 (D.C.1996) (internal quotations omitted).

Wilson attempted to introduce evidence that on September 10, 1994, three days before the murder of Ms. Clyburn, a sexual assault occurred in Rock Creek Park near the Park Road tennis courts. During that assault, which took place at approximately 2:30 a.m., a woman was abducted at gunpoint from 14th and Newton Streets, N.W., by a man speaking with a Nigerian accent. The assailant drove the woman around in his car for one half hour, and then took her to the Park Road tennis courts where he forced her to perform oral sex. He also threatened that he would make her marry him in order that he may obtain a green card. The victim in

---

4. Wilson also places considerable emphasis on the fact that the prosecutor argued elements of first degree murder, premeditation and deliberation, in his opening and closing statements.

However, as the jury was properly instructed in this case, statements and arguments of counsel are not evidence. CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 2.05 (4th ed.1993).

# 78

that case was able to escape from the assailant.

Wilson argues that evidence of the tennis court incident should have been admitted to show that the assailant in that assault was possibly the same assailant in this case. The trial court rejected Wilson's argument, and ruled that the evidence had "slight or nonexistent probity" which would be substantially outweighed by its prejudicial impact. The trial court ruled that Wilson's third-party culpability evidence would not survive under the "clearly linked" test of the so-called *Brown–Beale* principle.[5] The trial court also suggested that Wilson's proffer would not survive a "watered down" version of the *Brown–Beale* principle which the court suggested was "whether the evidence would tend to raise a reasonable doubt."

In *Winfield v. United States,* 676 A.2d 1 (D.C.1996) (*en banc*), which was decided after Wilson's trial, this court replaced the "clearly linked" standard articulated in the *Brown–Beale* principle. We decided that third-party culpability evidence is admissible if it " 'tend[s] to indicate some reasonable possibility that a person other than the defendant committed the charged offense.' " *Johnson v. United States,* 552 A.2d 513, 516 (D.C.1989) (adopted in *Winfield, supra,* 676 A.2d at 5). "Although this case was tried before *Winfield* was decided, we need not consider whether *Winfield* should be applied retroactively here. Rather, we conclude that under either the *Winfield* or the [*Brown–Beale* ] standard, appellant cannot prevail." *Gethers, supra,* 684 A.2d at 1271 (footnote omitted). Wilson argues that the two assaults were sufficiently similar to meet the standards for admission because "[b]oth assaults occurred in Rock Creek Park, both victims were picked up in neighborhoods that were close to one another, both victims were alleged to have been sexually assaulted and the two events occurred within three days of each other."

The third-party evidence proffered by Wilson does not "tend to indicate some *reason-able possibility* that a person other than defendant committed the charged offense." *Winfield, supra,* 676 A.2d at 5 (internal quotations omitted) (emphasis in original). In fact, the earlier attack in Rock Creek Park occurred in a different location and manner. First, in the tennis court incident, the victim was abducted and sexually assaulted. In this case, there was no evidence of an abduction, and the DNA evidence demonstrated that only Wilson had sexual contact with Ms. Clyburn. Second, in the tennis court incident, the victim was attacked at gunpoint, whereas, Ms. Clyburn was stabbed repeatedly with a knife and bludgeoned to death with a metal pipe. Third, the tennis court attack occurred inside a parked car. There was overwhelming evidence that Ms. Clyburn was beaten outside the car, and her body dragged several yards across a parking lot and up a hill. Based upon these factors, we are not convinced that the trial court abused its discretion in excluding Wilson's proffer of third-party culpability evidence.

Accordingly, for the foregoing reasons, the judgments of the trial court are affirmed.

*Affirmed.*

---

5. Under this principle, "before evidence of the guilt of another can be deemed relevant and thereby admissible, the evidence must clearly link that other person to the commission of the crime." *Brown v. United States,* 409 A.2d 1093, 1097 (D.C.1979), and *Beale v. United States,* 465 A.2d 796, 803 (D.C.1983).