Thomas HAGER, Appellant,

v.

UNITED STATES, Appellee.

No. 99–CF–902.

District of Columbia Court of Appeals.

Argued Jan. 3, 2001.
Decided Feb. 21, 2002.

Richard K. Gilbert, Washington, DC, for appellant.

Eileen F. Sheehan, Assistant United States Attorney, argued for appellee.

Catherine Cortez Masto, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney at the time the brief was filed, and John R. Fisher, Thomas J. Tourish, Jr., and Glenn L. Kirschner, Assistant United States Attorneys, were on the brief, for appellee.

Before RUIZ and WASHINGTON, Associate Judges, and PRYOR, Senior Judge.

WASHINGTON, Associate Judge.

Appellant, Thomas Hager, was found guilty of voluntary manslaughter while armed.[1] The trial court sentenced Hager to a term of imprisonment of ten to thirty years for manslaughter and a consecutive ten years to life for the use of a firearm during the commission of the crime. Hager filed a timely notice of appeal. Hager raises two issues on appeal: 1) the trial court abused its discretion when it precluded him from arguing that one of two other named persons present at the crime scene may have committed the murder; and 2) the trial judge erred in imposing a combined sentence of twenty years to life for a conviction of voluntary manslaughter while armed. We affirm.

## I.

In the early afternoon of October 20, 1996, Hager, Londell Duvall, and Michelle Fleming were playing craps in the back of an apartment building in the 4800 block of Alabama Avenue, S.E. Duvall's brother, Charles, stopped by and noticed that Keith Fogle, John and Cedrick Shuler, and another person by the name of Don were standing around the outside of the apartment buildings. During the craps game, Hager "hit a point," but before he could collect his money from the pot, Londell Duvall took $20 and refused to return it. Duvall then left the area with his friend, John Alexander, and returned about twenty-five to thirty minutes later. Hager demanded the $20 from Duvall, who again refused. Cedrick Shuler offered Hager the $20, but Hager stated that he wanted his money from Duvall. Fleming testified that John and Cedrick Shuler, Keith Fogle, and others were standing on the "front line of 4800 block" of Alabama Avenue, within proximity to Hager and Duvall. Alexander testified that he heard someone call Duvall's name, he saw Duvall turn around, and he watched as Hager shot Duvall in the back of the head. As Alexander ducked for cover, he saw Duvall fall to the ground on his left side, and watched as Hager knelt down and shot Duvall four more times in the head.

## II.

Hager argues on appeal that the trial court abridged his "right to present a defense" when it denied him the right to argue during closing argument that "one of the Shuler brothers had committed the murder." We have stated that the trial court "has broad discretion in controlling the scope of closing argument," *Peoples v.*

1. D.C.Code §§ 22–2405, –3202 (2001). In the District of Columbia manslaughter is not statutorily defined, but is defined by reference to the common law. *Williams v. United States,* 569 A.2d 97, 98 (D.C.1989).

*United States,* 329 A.2d 446, 449 (D.C. 1974), and that we "should exclude only those statements that misrepresent the evidence or the law, introduce irrelevant prejudicial matters, or otherwise tend to confuse the jury." *United States v. De-Loach,* 164 U.S.App. D.C. 116, 120, 504 F.2d 185, 189 (1974). However, "a prosecutor (or defense attorney) may not go beyond reasonable inference and engage in impermissible speculation." *Gardner v. United States,* 698 A.2d 990, 1000 (D.C. 1997) (citing *Mills v. United States,* 599 A.2d 775, 785 (D.C.1991)). In *Gardner,* we held that "the proper exercise of closing argument is to review the evidence and to explicate those inferences which may reasonably be drawn from the evidence." *Id.* (quoting *Dixon v. United States,* 565 A.2d 72, 77 (D.C.1989)). Determining what constitutes a reasonable inference or impermissible speculation is "usually a task best suited to the trial judge." *Id.*

■ We have stated that counsel cannot make an argument unsupported by the evidence admitted at trial. *Johnson v. United States,* 121 U.S.App. D.C. 19, 21, 347 F.2d 803, 805 (1965). Therefore, for Hager to make the argument that a specific named third person committed the crime with which he was charged, the evidence must establish "proof of facts or circumstances which tend to indicate some reasonable possibility that a person other than [Hager] committed the charged offense." *Winfield v. United States,* 676 A.2d 1, 4 (D.C.1996) (en banc). Despite this minimal inclusive relevance standard, the trial court should still exclude evidence that is too speculative with respect to the third party's guilt. *Boykin v. United States,* 738 A.2d 768, 773 (D.C.1999).

In this case, the evidence presented by Hager to support his argument is too speculative to indicate a reasonable possibility that John or Cedrick Shuler shot Londell Duvall. The mere fact that the Shuler

brothers were present at the time of the shooting fails to establish a reasonable possibility that one of them was the shooter. The additional fact that there was an alleged shoot-out between one or both of the Shuler brothers and Duvall several months prior to the murder, strengthens appellant's argument but in the end is far too speculative to support a *Winfield* argument. Fleming was unable to identify the basis of her knowledge about the shoot-out and was unable to testify about any of the circumstances surrounding the shoot-out. Duvall's brother, Charles, testified at trial that he did not think the shoot-out had ever occurred even though he was impeached with his prior grand jury testimony that a "shoot-out" had occurred. At trial, he maintained that the basis of his prior statement in the grand jury was "hearsay." Indeed, there was significant testimony at trial that John Shuler and Duvall were close friends and that they remained "buddies."

Hager also claims that the fact that John Shuler acted suspiciously by asking Duvall's brother to take him to the liquor store prior to the shooting further supports the notion that the Shulers were behind Duvall's murder. According to testimony elicited at trial, however, there was nothing suspicious about John Shuler asking Duvall's brother to take him to the store because he had done it before on numerous occasions. Finally, Hager claims that because John Shuler testified falsely before the grand jury that he was not at the scene of the murder, is an indication of his guilty conscience and further supports Hager's defense theory that one of the Shuler brothers shot Duvall. Evidence about John Shuler's perjury prosecution was not presented to the jury, however, and Hager does not contend that the trial court erred in failing to admit such evidence. Because there was no evidence before the jury to support Hager's

claim, Hager could not rely on it in closing argument to support his defense theory. *See Clayborne v. United States,* 751 A.2d 956, 969 (D.C.2000); *Johnson, supra,* 121 U.S.App. D.C. at 21, 347 F.2d at 805. Thus, based on our review of the record, we cannot say that the trial court abused its discretion when it found that the "evidence in the record of the Shulers' motive was weak," and that "if [the shoot-out several months earlier] can be considered motive evidence at all, it is not sufficient, when combined with the Shulers' presence at the scene, to provide a 'reasonable possibility' that one or both of the Shulers committed the charged offenses."

■ Alternatively, Hager further contends that he should have been allowed to argue that one of the Shuler brothers shot Duvall because it was "relevant to show the bias of the government's main witnesses." *Newman v. United States,* 705 A.2d 246, 254 (D.C.1997). In *Newman,* however, the defendant proffered evidence sufficient to establish that the witness had a motive to lie to protect her accomplices and was therefore biased. *Id.* at 253. In that case, we stated that to impeach a witness with bias, counsel must proffer some facts which support a genuine belief that the witness is biased in the manner asserted. *Id.* at 254. Here Hager fails to proffer any facts indicating that the witnesses in this case had a motive to lie to protect the Shuler brothers. The trial judge must "balance the probative value of the evidence against the risk of prejudicial impact, including the risk of jury confusion from a 'trial-within-a-trial,'" *Id.* at 256, and may "exclude marginally relevant evidence" if it will "distract the jury from the issue in this case." *Winfield, supra,* 676 A.2d at 5. We see no reason to disturb the trial court's ruling that there was insufficient evidence of witness bias presented to allow Hager to assert that one of the Shuler brothers was the shooter.

## III.

■ Finally, Hager contends that the trial court abused its discretion when it imposed a separate sentence on the "while armed" portion of the voluntary manslaughter charge as a consecutive sentence to the underlying offense. *See* D.C.Code § 22–3202 (1996). In this case, the trial court sentenced Hager to a sentence of ten to thirty years for voluntary manslaughter and an additional term of ten years to life for committing the offense while armed. Although the grounds for appellant's challenge to the "while armed" portion of his sentence are difficult to discern from his brief, his reliance on *Thomas v. United States,* 602 A.2d 647 (D.C.1992), suggests that he is challenging the legality of the sentence on merger grounds. If we have correctly discerned the basis for appellant's challenge, we categorically reject it.

D.C.Code § 22–3202 (1996) states in pertinent part:

(a) any person who commits *a crime of violence, or a dangerous crime* in the District of Columbia when armed with or having readily available any pistol or other firearm (or imitation thereof) or other dangerous or deadly weapon. . . .

(1) May, if such person is convicted for the first time of having so committed a crime of violence, or a dangerous crime in the District of Columbia, be sentenced, *in addition to the penalty provided for such crime,* to a period of imprisonment which may be up to life imprisonment and shall, if convicted of such offenses while armed with any pistol or firearm, be imprisoned for a mandatory-minimum term of not less than 5 years. . . .

(f) *Nothing contained in this section shall be construed as reducing any sentence otherwise imposed or authorized to be imposed.*

■ This court has recognized that one of the chief purposes of D.C.Code § 22–

3202 is to "authorize [the] imposition of an additional penalty for committing certain underlying offenses while armed with or having readily available a dangerous weapon." *Thomas, supra,* 602 A.2d at 650; *see also McCall v. United States,* 449 A.2d 1095, 1096 (D.C.1982). In interpreting the statutory language of D.C.Code § 22–3202, "the words of the statute should be construed according to their ordinary sense and with the meaning commonly attributed to them." *Rider v. United States,* 687 A.2d 1348, 1352 (D.C.1996) (quoting *Peoples Drug Stores, Inc. v. District of Columbia,* 470 A.2d 751, 753 (D.C.1983) (en banc)). "Crime of violence" is defined in D.C.Code § 22–3201(f) (1996) to include manslaughter.

In *Thomas,* we rejected the argument that the legislature intended for the offense of possession of a firearm during a dangerous crime to "merge" with the enhancement given that the "offenses which violate both § 3202 and [possession of a firearm during a dangerous crime pursuant to] § 3204(b) cannot be considered the 'same offense.'" *Thomas, supra,* 602 A.2d at 653. There, we held that as a sentencing enhancement provision, § 3202 "does not comprise a criminal offense in and of itself," but rather is dependent upon a conviction of an underlying offense. *Thomas, supra,* 602 A.2d at 650.

In addressing a similar challenge to a sentence enhanced by § 3202, we held that a defendant convicted of assault with a dangerous weapon (ADW), D.C.Code § 22–502 (1996), could receive the enhancement penalty under § 3202(a) because ADW was an included crime within the definition of crimes of violence. D.C.Code § 3201(f). *McCall, supra,* 449 A.2d at 1096. More recently, we held that the enhancement could be applied to an involuntary manslaughter conviction because the statute does not differentiate between types of manslaughter. *See Morris v. United States,* 648 A.2d 958, 961 (D.C.1994).

Thus, our case law makes clear that a conviction for a crime of violence triggers the applicability of the § 3202(a) sentencing enhancement and the penalties do not merge. Here, appellant was convicted of manslaughter, which has been defined as a "crime of violence." *See* D.C.Code § 22–3201(f) (1996). We, therefore, conclude that the trial court did not err in applying the penalty enhancement to appellant's manslaughter conviction.

Accordingly, Hager's conviction and sentence for voluntary manslaughter while armed is

*Affirmed.*