**Mark HARRIS, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 94–CF–580.

District of Columbia Court of Appeals.

Argued Sept. 28, 1995.
Decided Dec. 18, 1995.

Frederick J. Sullivan, appointed by this court, for appellant.

Magdalena A. Bell, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney, John R. Fisher, Roy W. McLeese, III, and Oscar S. Mayers, Assistant United States Attorneys, were on the brief, for appellee.

Before STEADMAN and RUIZ, Associate Judges, and PRYOR, Senior Judge.

PRYOR, Senior Judge:

A jury convicted appellant of first-degree murder, three counts of assault with a dangerous weapon, two counts of destroying property, possession of a firearm during a crime of violence or dangerous offense, carrying a pistol without a license, possession of an unregistered firearm, and unlawful possession of ammunition, in violation of D.C.Code §§ 22–2401, –3202, –502, –403, –3204(b), –3204(a) (1989 Repl. & 1995 Supp.); D.C.Code §§ 6–2311(a), –2361(3) (1995 Repl.). On appeal, appellant argues that: (1) the government failed to present sufficient evidence of appellant's identity as the murderer; (2) the evidence was insufficient to support a conviction of first-degree murder; and (3) the statement exculpating appellant should have been admitted under the declaration against interest exception to the hearsay rule. We affirm.[1]

## I.

On November 15, 1991, between 5:30 and 6:00 p.m., appellant rode his bicycle onto the 1300 block of Park Road, N.W. Many residents of Park Road were outside enjoying an unseasonably warm evening, and the victim, Rene Best, was asleep on the front steps of 1319 Park Road. Appellant entered a house on Park Road in an attempt to find two individuals identified as John–John and Kevin. A few minutes later, appellant exited the house and noticed that his bicycle had been stolen. Appellant appeared angry over the theft of his bicycle, and asked if anyone knew who had taken it. He then approached Cofield Richardson and told him to "lean down because he was about to do something." Appellant pulled out a .9 millimeter semi-automatic pistol and began shooting, striking two cars and injuring one passenger.

After striking the cars, appellant crossed the street and continued to fire his gun. Everyone in the area fled except for the victim, who was still asleep on the front steps

---

1. This court has earlier resolved a Fourth Amendment question in this case. *United States* *v. Harris,* 629 A.2d 481 (D.C.1993).

of 1319 Park Road. Appellant knocked on the door of the apartment at 1319 Park Road where Lissa Spencer, Lennie Taylor, and another individual fled, and shouted "bitch, open the door." They refused to open the door. Appellant then approached the victim, pointed at his chest, and fired twice. After shooting Mr. Best, appellant started to walk away and stated, "I'm going to shoot up the whole neighborhood if I don't get my bike." Appellant put his gun in his pants and walked to his home at 1372 Kenyon Street, N.W., which is approximately two blocks away.

The police went to appellant's home to arrest him, and Officer Gregory W. Bailey testified that he heard a "thud, something dropping to the ground," when he approached appellant's bedroom. Appellant then exited his room and the police arrested him. A search of his bedroom revealed a .9 millimeter pistol, which the government established could have been the murder weapon,[2] and a clip of ammunition in appellant's pants pocket.

Appellant testified that he stayed indoors all day because of a hangover. He further testified that a friend, Charles Nolan, visited him and asked to borrow some of his clothes. Appellant's mother and girlfriend testified that appellant was sick that day, but neither could vouch for his whereabouts at the time of the shootings.[3] Appellant's sister testified that she saw appellant at the corner of 14th and Kenyon Streets, N.W. at approximately 6:20 p.m. She stated that appellant lent her money and then continued on his way home.[4]

## II.

Appellant claims that the government failed to present sufficient evidence of appel-

lant's identity as the murderer. Moreover, appellant argues that there was no evidence of premeditation or deliberation to support his conviction of first-degree murder.

A claim of evidentiary insufficiency must be viewed in the light most favorable to the government, bearing in mind the trier of fact's right to determine the credibility of witnesses and form reasonable inferences. *Shelton v. United States,* 505 A.2d 767, 769 (D.C.1986). This court will only overturn a conviction where there is no evidence upon which a reasonable mind could fairly conclude guilt beyond a reasonable doubt, drawing no distinctions between direct and circumstantial evidence. *Curry v. United States,* 520 A.2d 255, 263 (D.C.1987).

Clearly, the government has met its burden of presenting sufficient evidence to establish appellant's identity as the murderer. Lissa Taylor testified that she saw appellant through the window of her door as he threatened her and attempted to enter the apartment. She then testified that "I could see sparkles come out of the gun. I could see [appellant] point the gun in [the victim's] direction and shoot that man." Moreover, the government presented Timothy Glymph and Cofield Richardson, who both testified that they saw appellant shoot the victim. Finally, two other witnesses testified that they saw appellant in the vicinity of Park Road when the shooting occurred.

Regarding appellant's claim that the government failed to present any evidence of premeditation and deliberation, this court has held that in order to prove premed-

---

2. Gary Phillips, a firearms identification specialist with the Metropolitan Police Department, testified that the markings on the bullets recovered by the police indicated that they were fired from a gun barrel that had been altered or modified in some way. Moreover, the interior of the barrel of the gun found in appellant's bedroom had also been altered. Although Phillips testified that the gun could have fired the bullets recovered from the crime scene, he noted that it was impossible to make a positive identification.

3. Dovey Dozier, appellant's mother, testified that she was out of the house from 6:00 to 8:00 p.m., and that appellant was in bed when she left and

when she returned. Jamila Vines, appellant's girlfriend, saw appellant at his home at 5:00 p.m. and again at 11:00 p.m.

4. In his brief, appellant claims that his sister testified that she spoke to appellant at his home between 6:15 and 6:30 p.m., "the exact time of the events on Park Road." The transcript, however, does not reflect this. Appellant's sister testified that she spoke to appellant on 14th and Kenyon Streets at approximately 6:20 p.m. and that after their conversation, appellant headed home.

itation, the government must show that the defendant, before acting, "gave thought to the idea of taking a human life and reached a definite decision to kill." *McAdoo v. United States,* 515 A.2d 412, 427 (D.C.1986). In order to prove deliberation, the government must demonstrate that "the accused acted with consideration and reflection upon the preconceived design to kill." *Id.* Both premeditation and deliberation may be inferred from the surrounding facts and circumstances, and may occur in a period "as brief as a few seconds." *Ruffin v. United States,* 642 A.2d 1288, 1291 (D.C.1994) (citation omitted); *McAdoo, supra,* 515 A.2d at 427.

■ We conclude there was sufficient evidence of premeditation and deliberation. *See* D.C.Code § 22-2401 (1995 Supp.); *Hall v. United States,* 454 A.2d 314, 317-18 (D.C. 1982) (holding that a jury could find premeditation and deliberation in light of appellant's motive, the fact that he brought the murder weapon to the scene of the crime, and the manner and circumstances of decedent's death). Appellant brought a weapon to Park Road, displayed anger over the theft of his bicycle, and warned Cofield Richardson that he should "lean down" because he was going to "do something." *See McAdoo, supra,* 515 A.2d at 427 (bringing the murder weapon to the scene of the crime is highly probative of premeditation and deliberation). Appellant then aimed and shot at two cars, walked across the street to 1319 Park Road, and threatened Lissa Spencer, Lennie Taylor and another individual. After they refused to let him in their apartment, appellant turned toward the victim, aimed at his chest and shot him twice. *See Head v. United States,* 451 A.2d 615, 623 (D.C.1982) (noting that "fact that [victims] were shot in the head, probably at close range as they lay face down on the ground gives rise to an inference of a calculated plan rather than an impulsive act"). Appellant then threatened to shoot the entire neighborhood before calmly retreating to his house. Lissa Spencer testified that she "looked out the window and saw that fool walking down the street cool, calm and collected" as he left the murder scene. Clearly, the evidence allowed a jury to conclude that appellant "gave thought, before acting, to the idea of taking a human life and [reached] a definite decision to kill," and we will not disturb the verdict.

### III.

Appellant claims that the trial court erred in granting the government's *motion in limine,* which precluded the introduction of statements allegedly exculpating appellant. At a pre-trial hearing on December 8, 1993, appellant presented Sherman Hogue, a private investigator, who visited Charles Nolan, an inmate at the D.C. Detention Center. Nolan and appellant were friends and inmates together approximately eight months after appellant's arrest. Hogue testified that Nolan gave him an affidavit in which he admitted to killing Rene Best. Nolan also stated that after the shooting, he went to appellant's house, borrowed clothes, and hid the murder weapon. Appellant contended that Nolan's affidavit and Nolan's oral confessions to Hogue and another private investigator working on appellant's behalf, though hearsay, should be admitted as statements against penal interest. The government presented Detective Mitchell Alonza Credle, who testified that he observed Nolan talking to his attorney. Credle overheard Nolan admit that he had written the affidavit in order to get his good friend off. Credle also overheard Nolan ask his attorney whether the affidavit could be admitted if he did not testify.

The trial court granted the government's *motion in limine,* finding that "the corroborating circumstances do not indicate the trustworthiness of the statement." The court focused on three factors in making this determination: (1) the admission was made eight months after the murder and was not made to a person with whom Nolan had a close relationship; (2) the statement was made while Nolan and appellant were inmates together; and (3) although Nolan originally indicated his desire to waive his Fifth Amendment privilege, he was overheard telling his attorney that "he only wanted to get his boy off," thus indicating Nolan's understanding of the disserving nature of his statement and suggesting fabrication.

██ Statements against penal interest are admissible if the trial court finds that the declarant made the statement, the declarant is unavailable to testify, and there are corroborating circumstances clearly indicating the trustworthiness of the statement. *Laumer v. United States,* 409 A.2d 190, 199 (D.C.1979) (en banc). This is identical to Federal Rules of Evidence 804(b)(3).[5] In order to determine whether the corroboration factor has been met, the trial court may look at the time the statement was made and to whom it was made, the existence of corroborating evidence in the case, and the extent to which the declaration is truly against the declarant's penal interest. *Id.* at 200 (citing *Chambers v. Mississippi,* 410 U.S. 284, 300–301, 93 S.Ct. 1038, 1048–1049, 35 L.Ed.2d 297 (1973)). Both parties stipulated that the statement was made by Nolan and that he was unavailable to testify. Thus, our focus is on the corroboration requirement. In reviewing the trial court's ruling on the admissibility of a declaration against penal interest, this court will not disturb the trial court's findings unless they are clearly erroneous. *Id.* at 203.

We begin with the observation that the statement offered by appellant was hearsay, and therefore subject to customary concerns as to veracity and reliability. Thus, the treatment of a statement against penal interest in the Federal Rules and in our decisions, is a departure from the common law, which only allowed statements against pecuniary or proprietary interests. *United States v. Riley,* 657 F.2d 1377, 1382 (8th Cir.1981). This change was made cautiously, accompanied by a requirement of corroboration regarding the trustworthiness of the statement offered.

██ Against this background, we decline to hold that the trial court's decision to exclude Nolan's statement was clearly erroneous. Nolan admitted the crime in an affidavit given to appellant's investigator nine months after the murder. *See Irby v. United States,* 585 A.2d 759, 765 (D.C.1991) (noting that statement made three months after the crime to a notary public was neither spontaneous, nor made to a close friend indicating trust, and thus not admissible under the declaration against penal interest exception to the hearsay rule). Furthermore, the only evidence linking Nolan to the murder was testimony by appellant's mother and sister that appellant physically resembled Nolan, and appellant's testimony that around the time of the murder, Nolan came to his home and "asked me can he put some clothes on and I told him to go ahead ... I just went back to bed ... I can't basically say, you know, [whether Nolan left anything in appellant's bedroom] because I wasn't really paying attention to him." Appellant presented no evidence that Nolan put appellant's clothing on or that he hid the murder weapon in appellant's room. Moreover, appellant's sister placed him at the crime scene at approximately 6:20 p.m., and appellant was unable to present anybody to support his claim that he was sick in bed at the time of the murder. Finally, there are other circumstances indicating that Nolan's statement may not be trustworthy. Nolan was overheard stating that he would invoke his Fifth Amendment privilege, and that he only wanted "to get his boy off." Certainly this indicates that Nolan may have fabricated the statement. Viewed in their totality, the circumstances support the trial court's finding that the corroborating circumstances do not clearly indicate the trustworthiness of the statement, and we will not disturb that holding. *See also United States v. Noel,* 938 F.2d 685, 688–89 (6th Cir.1991) (upholding exclusion of statement in light of, among other things, relationship between declarant and accused); *United States v. Hendrieth,* 922 F.2d 748, 750 (11th Cir.1991) (same).

---

5. Federal Rule of Evidence 804(b)(3) states that a statement against interest is admissible if it is: A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the defendant is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

Accordingly, we affirm the convictions.

*So ordered.*