Michael McCULLOUGH and MacArthur Williams, Appellants,

v.

UNITED STATES, Appellee.

Nos. 99–CF–900, 99–CF–942.

District of Columbia Court of Appeals.

Argued June 7, 2001.

Decided June 26, 2003.

---

Monoranjan Bezborua, for appellant McCullough.

G. Godwin Oyewole, Washington, DC, for appellant Williams.

Rhonda T. Redwood, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney at the time the brief was filed, and John R. Fisher, Mary–Patrice Brown, and Paul A. Quander, Assistant United States Attorneys, were on the brief, for appellee.

Before WAGNER, Chief Judge, and FARRELL and WASHINGTON, Associate Judges.

WASHINGTON, Associate Judge:

On June 30, 1998, appellants, Michael McCullough and MacArthur Williams, were found guilty by a jury of obstruction of justice, in violation of D.C.Code § 22–722(a)(4) (1996), currently D.C.Code § 22–722(a)(4) (2001); obstruction of justice, in violation of D.C.Code § 22–722(a)(2) (1996), currently D.C.Code § 22–722(a)(2) (2001); conspiracy to commit murder and obstruction of justice, in violation of D.C.Code §§ 22–105a, –722, –2401, –3202, –3204 (1996), currently D.C.Code § 22–1805a, –722, –2101, –4502, –4504 (2001); first-degree murder while armed (premeditated), in violation of D.C.Code §§ 22–2401, –3202 (1996), currently D.C.Code § 22–2101, –4502 (2001); possession of a firearm during the commission of a crime of violence or dangerous offense (PFCOV), in violation of D.C.Code § 22–3204(b) (1996), currently D.C.Code § 22–4504(b) (2001); and carrying a pistol without a license (CPWL), in violation of D.C.Code § 22–3204(a) (1996), currently D.C.Code § 22–4504(a) (2001). McCullough and Williams argue that: 1) the trial court abused its discretion by denying McCullough's motion for severance; 2) the trial court improperly precluded the appellants from cross-examining Mack Williams for bias and introducing third-party perpetrator testimony; 3) the evidence was insufficient to sustain their convictions; 4) the trial court improperly denied McCullough's request for a multiple conspiracy jury instruction; and 5) Williams' convictions for first-degree murder, obstruction of justice and conspiracy should have been merged. We affirm.[1]

## I.

We need only to briefly review the circumstances surrounding these charges.

---

1. Each of appellants' arguments can be addressed summarily. We publish, however, because no panel of this court has addressed the obstruction of justice merger issue presented in this appeal. *See* section V, *infra*.

On May 17, 1997, Jose Brown was beaten and strangled in a parking lot in Northwest, Washington, D.C. During the investigation of Brown's murder, investigators received information from Sharon Jackson that although she did not witness the beating, she had seen two individuals, Elliott Wallace and Andrew Tillman, in the area where the victim was found. Wallace and Tillman were subsequently arrested. McCullough and Williams learned that Jackson had snitched on Wallace and Tillman. After confirming that Jackson had indeed gone to the police, appellants and others decided that the best thing to do was to kill Jackson. Williams had even told his father, Mack Williams, that Jackson was to be killed before the end of the week:

On December 1, 1997, Jackson was killed in front of an apartment building located on 1527 Park Road, N.W., Washington, D.C. She was the victim of four gunshot wounds, two to the back of her head and two to her back. After the shooting, Mack Williams, appellant Williams' father, heard Williams' voice in the area of the shooting urging someone to hurry as he fled and then saw his son leave through the backdoor of the apartment building, get into a car with another person, and leave the area. Another witness also testified that he saw Williams leaving the scene. Testimony at trial showed that McCullough was also involved in the shooting. Jackson was killed prior to investigators identifying additional accomplices and before she had testified in front of the grand jury. McCullough and Williams were later arrested.

## II.

McCullough argues that the trial court committed reversible error by denying his motion for severance from his codefendant, Williams.

Generally, when individuals have been charged together, there is a strong presumption that they should be tried together. A severance may be granted, however, if trying the individuals together "prejudices any party." A denial of severance will only be overturned for an abuse of discretion. In assessing a request for severance, the trial court should weigh the potential prejudice "against the considerations of judicial economy and expeditious proceedings." To show an abuse of discretion, the appellant must show not only prejudice, but manifest prejudice.

*Mercer v. United States*, 724 A.2d 1176, 1193 (D.C.1999) (internal citations omitted).

On appeal, McCullough asserts that he was convicted due to "insidious guilt by association." Specifically, McCullough alleges that introduction of evidence that Williams had previously been seen with a gun, which McCullough argues is probative only to the charges against Williams, was prejudicial to him. Prior to trial, McCullough filed a pretrial motion to sever both counts and defendants, pursuant to Super. Ct.Crim. R. 8(b) and 14, claiming that it was "quite likely" that McCullough's co-defendant would present inconsistent defenses. The motion was denied. However, at no time did McCullough claim that his case should be severed on the grounds that Williams had been seen with a gun at some time prior to the shooting. Instead, when the trial court made it clear that this evidence was admitted only to show access to a weapon that could have been the murder weapon, McCullough did not renew his severance motion. Because McCullough did not move for severance on his newly raised "guilt by association" ground, nor did he object to the admissibility of the gun evidence on that ground during trial, we re-

view for plain error. *See Hunter v. United States,* 606 A.2d 139, 144 (D.C.1992). Under the plain error standard of review, the appellant bears the burden of first establishing error, a deviation from the legal rule, and second, demonstrating that the error was so plain that the judge was derelict in countenancing it. *See United States v. Olano,* 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *United States v. Frady,* 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).

■ Here, because the trial court properly allowed the gun to be admitted into evidence for a limited (and permissible) purpose, to show that the appellants had the means to commit the crime, there is no evidence that McCullough met his burden of demonstrating any error at all. *See Sanders v. United States,* 809 A.2d 584, 590 (D.C.2002); *Coleman v. United States,* 379 A.2d 710, 712 (D.C.1977). Furthermore, even if the evidence were only probative of the charges against Williams, there is no evidence that McCullough's substantial rights were affected. The trial court gave limiting instructions to the jury that they should think of the proceedings as two separate trials and that they were to consider the evidence against McCullough and Williams separately. It is well settled in this jurisdiction that jurors are presumed to follow instructions, *McClellan v. United States,* 706 A.2d 542, 553 (D.C. 1997), and since McCullough raises no argument to the contrary we presume the jurors followed the instruction by the trial court. For the foregoing reasons, we cannot conclude that the trial court committed plain error in denying McCullough's motion for severance.

### III.

■ McCullough and Williams claim that the trial court erred when it refused to allow them to suggest that Williams'

father, Mack Williams, was the true murderer, or in the alternative, that some other unnamed and unidentified person committed the murder. They further argue that they were precluded from cross-examining Mack Williams for bias. "A trial court ruling that certain evidence is not relevant or probative is a highly discretionary decision which will be upset on appeal only upon a showing of grave abuse." *Wilson v. United States,* 711 A.2d 75, 77 (D.C.1998) (quoting *Gethers v. United States,* 684 A.2d 1266, 1271 (D.C.1996)).

### A. Third–Party Perpetrator Evidence

■ For McCullough and Williams to make the argument that a third party committed the crime with which they were charged, the evidence must establish

> proof of facts or circumstances which tend to indicate some reasonable possibility that a person other than the defendant committed the charged offense. The "focus" of the standard is not on the third party's guilt or innocence, but "on the effect the evidence has upon the defendant's culpability," and in this regard it "need only *tend* to create a reasonable doubt that the defendant committed the offense."

*Winfield v. United States,* 676 A.2d 1, 4 (D.C.1996) (quoting *Johnson v. United States,* 552 A.2d 513, 516 (D.C.1989)). However, the trial court should still exclude evidence that is too speculative with respect to the third party's guilt. *See Boykin v. United States,* 738 A.2d 768, 773 (D.C.1999). The trial court has "discretion to exclude marginally relevant evidence creating the danger that ... [it] will distract the jury from the issue in this case." *Winfield,* 676 A.2d at 5.

In this case, the evidence presented by McCullough and Williams to support their argument is too speculative to indicate a reasonable possibility that Mack Williams

or someone else killed Jackson. McCullough and Williams wanted to bring in evidence of the relationship between the deceased and Mack Williams, which they assert tends to indicate that Mack Williams had the motive to kill Jackson. However, the appellants failed to proffer what the nature of Mack Williams' and Jackson's relationship was or that there was any evidence of antagonism between them. In fact, they concede that no proffer was made by them as to what Mack Williams could further offer or show to support a third party perpetrator defense. McCullough and Williams merely were requesting the opportunity to blindly probe in an effort to unearth supporting information for their defense. The evidence they sought to present to the jury failed to show that the alleged third-party perpetrators existed or that the perpetrators had the motive and practical opportunity, including at least inferential knowledge of the victim's whereabouts, to commit the crime for which they are charged. *See generally Resper v. United States*, 793 A.2d 450, 460 (D.C.2002); *Gethers*, 684 A.2d at 1272; *Wilson v. United States*, 711 A.2d 75 (D.C.1998). Appellants also claim that Jackson's lifestyle as a drug dealer gave others reason to kill her and that they should have been able to introduce third-party perpetrator evidence to that effect. We rejected this argument in *Gethers*, 684 A.2d at 1272, and we do so here as well.

### B. Cross–Examination for Bias

 McCullough and Williams also argue that the trial court abused its discretion by limiting the cross-examination of Mack Williams on the basis that it was too prejudicial. Specifically, the appellants sought to introduce evidence that suggested that Mack Williams was the actual murderer, and therefore his testimony which implicated the appellants was biased.

"The Sixth Amendment guarantees to criminal defendants not only the right to confront and cross-examine witnesses against them, but also 'the right to present evidence that someone else committed the offense for which [he] is on trial.'" *Boykin* 738 A.2d at 773 (citations and internal quotations omitted). However, "[a] defendant's right to pursue a particular line of cross-examination is circumscribed by general principles of relevance." *Id.* (citation omitted). A trial court's ruling on whether certain evidence is relevant or probative "is a highly discretionary decision which will be upset on appeal only upon a showing of [abuse of discretion]." *Gethers*, 684 A.2d at 1271 (quoting *Mitchell v. United States*, 408 A.2d 1213, 1215 (D.C.1979)). Relevant evidence is "that which tends to make the existence or nonexistence of a fact more or less probable than would be the case without that evidence." *Winfield*, 676 A.2d at 2 (citation omitted). Moreover, the trial court has "wide latitude in the control of [the] cross-examination" where it did not keep from the jury relevant and important facts bearing on the trustworthiness of crucial information. *Springer v. United States*, 388 A.2d 846, 855 (D.C.1978) (citations omitted).

In this case, appellants argue that the trial court erred when it did not permit the appellants to cross-examine Mack Williams and elicit that he was biased because he had the motive and opportunity to kill Jackson. We disagree with the appellants' contention. A review of the record shows that the trial court permitted considerable questioning of Mack Williams; however, it simply did not permit third-party perpetrator evidence, which we have already concluded was properly excluded. The trial court balanced the probative value of the proffered testimony versus the prejudicial impact, and found that the proffered testimony was really counsels' attempt to

introduce negative evidence about Jackson to distract the jury from the guilt or innocence of Williams and McCullough. Therefore, the trial court did not abuse its discretion by limiting the cross examination of Mack Williams on the basis that the prejudicial impact of his cross-examination outweighed its probative value.

## IV.

 McCullough and Williams also claim that the trial court erred in denying their motions for judgments of acquittal based on insufficiency of the evidence. When reviewing the denial of a motion for judgment of acquittal, this court "employs the same standard as that applied by the trial court in determining whether the evidence was sufficient to convict." *Curry v. United States,* 520 A.2d 255, 263 (D.C. 1987). This court must "view the evidence in the light most favorable to the government, giving deference to the fact finder's right to weigh the evidence, determine the credibility of the witnesses, and draw inferences from the evidence presented. We can only reverse a conviction on this ground if there is no evidence upon which a reasonable mind could infer guilt beyond a reasonable doubt." *Patton v. United States,* 633 A.2d 800, 820 (D.C.1993).

### A. First–Degree Murder

 To prove first degree premeditated murder while armed, the government must present evidence that a defendant intentionally killed another human being, while armed, with premeditation and deliberate malice. *See* D.C.Code §§ 22–2401, –3202. The deliberation element requires "consideration and reflection upon the preconceived design to kill," while the premeditation element requires proof that the defendant "gave thought [before acting] to the idea of taking a human life and reached a definite decision

to kill." *Harris v. United States,* 668 A.2d 839, 842 (D.C.1995) (citations omitted). The evidence of deliberation and premeditation may be inferred from the facts and circumstances surrounding the murder. *Ruffin v. United States,* 642 A.2d 1288, 1291 (D.C.1994). In this case, evidence was presented that both McCullough and Williams plotted to kill Jackson; Jackson died from wounds coming from a small gun; eyewitnesses had seen Williams with such a gun; Mack Williams had heard appellant Williams' voice coming from the direction of the apartment where the shooting took place; and eyewitnesses saw Williams flee from the apartment complex where the murder took place. Therefore, viewing the evidence in the light most favorable to the government, the evidence against Williams was sufficient for the jury to infer guilt beyond a reasonable doubt.

 McCullough was convicted of first-degree murder under the theory of aiding and abetting. A conviction for aiding and abetting requires proof of three elements: 1) a crime was committed by someone; 2) appellant assisted or participated in its commission; and 3) he did so with guilty knowledge. *Blakeney v. United States,* 653 A.2d 365, 370 (D.C.1995). One who aids and abets another in a criminal offense can be charged as the principal for all acts committed in furtherance of the common purpose. *Roy v. United States,* 652 A.2d 1098, 1105 (D.C.1995). Here, in addition to the evidence which demonstrated Williams committed the murder, the record indicated that McCullough was seen with Williams and others deliberating on the fate of Jackson and that he confessed that he participated in the planning and murder of Jackson. Furthermore, several witnesses identified McCullough as fleeing the scene in the getaway car. Therefore, viewing the evidence in the light most favorable to the government, McCullough's

conviction for first-degree murder must be sustained under a theory of aiding and abetting.

### B. Obstruction of Justice

■■■ "A person commits the offense of obstruction of justice if that person: knowingly uses intimidating or physical force, threatens or corruptly persuades another person, or ... endeavors to influence, intimidate, or impede a witness ... in any official proceeding, with intent to: influence, delay or prevent the truthful testimony of the person in an official proceeding." D.C.Code § 22–722(a)(2). Obstruction of justice is also committed when a person "injures any person or his property on account of the person or any other person giving to a criminal investigator in the course of any criminal investigation information related to a violation of any criminal statute in effect in the District of Columbia." D.C.Code § 22–722(a)(4).

Testimony of two witnesses demonstrated that McCullough knew that Jackson was a witness, and it was he who later confirmed her informant status for the rest of the conspirators. By killing Jackson, her testimony was impeded, and the ultimate goal of silencing a key witness was fulfilled. In addition, D.C.Code § 22–722(a)(4) was satisfied because Jackson was killed in retaliation for giving information to the police about criminal activity. Therefore, when viewing the evidence in the light most favorable to the government, the evidence was sufficient to support these convictions.

### C. Conviction for Conspiracy

■■■ To sustain a conviction for conspiracy, the government must prove: 1) an agreement between two or more people to commit a criminal offense; 2) knowing and voluntary participation in the agreement by the defendant with the intent to commit

a criminal objective; and 3) commission in furtherance of the conspiracy of at least one overt act by a co-conspirator during the conspiracy. *Gibson v. United States*, 700 A.2d 776, 779 (D.C.1997). McCullough claims that proof was legally insufficient to establish that he was guilty of conspiring to commit first-degree premeditated murder and obstruct justice. There is ample evidence to show that all three prongs were met. Evidence showed that McCullough participated in conversations with his co-conspirators about murdering Jackson, and that he and others took actions designed to implement the agreed upon murder. Thus, there is sufficient evidence to support this conviction as well.

### D. Possession of Firearm During the Commission of a Crime of Violence and Carrying a Pistol Without a License

■■■ McCullough and Williams contend that there was insufficient evidence for the charges of possession of a firearm during the commission of a crime of violence and carrying a pistol without a license. According to D.C.Code § 22–3204(b), the requirements of PFCOV are: 1) the defendant committed a crime of violence; 2) during the commission of the crime of violence, the defendant possessed a firearm; and 3) that he did so knowingly and intentionally. The requirements of CPWL are: 1) carrying a pistol, either openly or concealed on one's person, outside one's own dwelling or place of business, or other land possessed by the defendant and 2) without a license to do so. *Ray v. United States*, 620 A.2d 860, 865 (D.C.1993). In this case, the appellants were convicted of PFCOV and CPWL under a theory of aiding and abetting. As we noted above, a conviction for aiding and abetting requires proof of three elements: 1) a crime was committed by someone; 2)

appellant assisted or participated in its commission; and 3) he did so with guilty knowledge. *Blakeney*, 653 A.2d at 370. Viewing the evidence in the light most favorable to the government, there was sufficient evidence for a jury to find Williams and McCullough guilty of these charges. The government introduced evidence that neither Williams nor McCullough had a valid license to carry a firearm in the District. Furthermore, as we discussed in section IV.A. *supra*, there was ample evidence to show that Williams shot and killed Jackson, this evidence alone satisfies the requirements because it demonstrates that Williams possessed at least one of the guns that killed Jackson. McCullough argues that he was merely present and not an active participant in the crime, thus there was insufficient evidence to find him guilty of these charges. When viewing the evidence in the light most favorable to the government, there was sufficient evidence, as discussed in section IV.A. *supra*, for the jury to conclude that not only was McCullough was an active participant in the conspiracy but also aided and abetted the crimes of PFCOV and CPWL. *See, e.g., Dang v. United States*, 741 A.2d 1039, 1043 (D.C.1999) (concluding that a defendant may be charged as an aider and abetter for PFCOV); *Halicki v. United States*, 614 A.2d 499, 503–04 (D.C. 1992) (noting that a defendant may be charged as an aider and abetter for a CPWL and stating that "in order to convict of CPWL on an aiding and abetting theory, the government must show that the principal (not the aider and abettor) was not licensed to carry the pistol."). The government clearly satisfied its burden in this case.

## V.

 Williams claims that his convictions for first-degree murder, obstruction of justice and conspiracy should merge. Sentencing courts may not exceed the sentencing limits proscribed by the legislative branch of the government. *See Jones v. Thomas*, 491 U.S. 376, 381, 109 S.Ct. 2522, 105 L.Ed.2d 322 (1989). When determining whether there are two offenses or only one, thus requiring merger of the sentences, we apply the test enunciated by the Supreme Court in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932):

> Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.

*Id.* at 304, 52 S.Ct. 180. When applying this test, the focus should be "whether each statutory provision required proof of an element that the other did not." *Byrd v. United States*, 598 A.2d 386, 390 (D.C. 1991) (en banc).

 First, in *Robinson v. United States*, 608 A.2d 115, 116 (D.C.1992), this court concluded that a conspiracy count does not merge with any underlying offense, thus Williams' conviction for conspiracy to murder and obstruction of justice does not merge with his convictions for the substantive offenses of murder and obstruction of justice.

 Second, Williams' convictions under separate provisions of the obstruction statute do not merge. The relevant portion of D.C.Code § 22–722(a)(2) requires that a defendant knowingly use physical force to endeavor to "influence, intimidate, or impede a witness ... in any official proceeding," while D.C.Code § 22–722(a)(4) requires that a defendant injure a person or his property on account of the person "giving to a criminal investigator in the course of any criminal investigation

information relating to the violation of any criminal statute in the District of Columbia." Thus, to be found guilty under these provisions requires different facts. Under § 22–722(a)(4), the government must prove actual injury to another person—any person—based on the person's giving information to a criminal investigator, whereas § 22–722(a)(2), though not requiring injury, requires proof of intimidation or force intended to influence a person of a specific kind—"a witness or officer in any official proceeding." *See* § 22–722(a). Thus, the legislature made it possible to be guilty of both (a)(2) and (a)(4) separately. Both of these sections deal with separate and distinct forms of obstruction of justice, which merit separate and distinct punishments. Indeed, the legislative history supports this analysis. *See* D.C. COUNCIL OF D.C., COMM. ON THE JUDICIARY Report on Bill 4–133, District of Columbia Theft and White Collar Crimes Act of 1981 at 96 (Feb. 12, 1981) (noting that D.C.Code § 22–703, "encompasses four separate offenses"). In this case, the appellants first used physical force to impede Jackson's testimony against Wallace and second, killed her for providing Wallace's name to the police. They thus committed actions making them liable for violating both sections of the statute. Because these are two separate forms of obstruction of justice, Williams' convictions do not merge.

## VI.

■ McCullough claims that the trial court erred in refusing to grant his request for a multiple conspiracy jury instruction. Specifically, McCullough claims that the use of the word "and" between obstruction of justice and murder in the conspiracy count indicated that there were actually two conspiracies. However, the court did note that both crimes were "part and parcel" of the same conspiracy. For a multiple conspiracy instruction to be justified, the defendant must show that the instruction is on an issue that is fairly raised by the evidence. *See Mathews v. United States*, 485 U.S. 58, 64, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988). In determining whether the evidence supports a finding of a single conspiracy, the court looks at whether the defendants shared a common goal, any interdependence between the alleged participants and any overlap among the alleged participants. *See United States v. Gatling*, 321 U.S.App.D.C. 63, 72, 96 F.3d 1511, 1520 (1996); *United States v. Graham*, 317 U.S.App.D.C. 418, 423, 83 F.3d 1466, 1471 (1996). McCullough and Williams have not made a sufficient argument that there was more than one conspiracy. The conspirators' single goal was to keep Jackson from testifying; the members of the conspiracy were dependent upon each other to accomplish that goal; and there is no evidence of overlap in the participants of the conspiracy. Because McCullough failed to demonstrate that the presence of multiple conspiracies was fairly raised by the evidence, no multiple conspiracy jury instruction was required. *See Khaalis v. United States*, 408 A.2d 313, 341–43 (D.C.1979).

For the foregoing reasons, the judgment is

*Affirmed.*