*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 14-CO-887

MACARTHUR D. WILLIAMS, APPELLANT,

v.

UNITED STATES, APPELLEE.

FILED 08/2/2018
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

Appeal from the Superior Court
of the District of Columbia
(FEL-9907-97)

(Hon. Henry F. Greene, Trial Judge)

(Submitted January 9, 2018                    Decided April 26, 2018)[*]

*Sicilia C. Englert* was on the brief for appellant.

*Chimnomnso N. Kalu*, Assistant United States Attorney, with whom *Channing D. Phillips*, United States Attorney at the time the brief was filed, *Elizabeth Trosman*, *Suzanne Grealy Curt*, and *Timothy Lucas*, Assistant United States Attorneys were on the brief for appellee.

Before BLACKBURNE-RIGSBY, *Chief Judge*, EASTERLY, *Associate Judge*, and FERREN, *Senior Judge*.

---

[*]  The decision in this case was originally issued as an unpublished Memorandum Opinion and Judgment.  It is now being published upon the court's grant of appellee's motion to publish.

After the initial April 26, 2018, issuance of this decision, this court added a new second paragraph in part I regarding the factual background of the murder.

FERREN, *Senior Judge*: On June 30, 1998, appellant MacArthur Williams and his co-defendant, Michael McCullough, were convicted of a number of offenses in connection with the shooting death of Sharon Jackson.[1] This court affirmed his convictions on direct appeal.[2] Appellant subsequently filed a motion for relief pursuant to the Innocence Protection Act ("IPA"),[3] in which he alleged there was new evidence proving his actual innocence. After a two-day hearing, the trial court denied his motion. On appeal, appellant asserts that the trial court abused its discretion in denying his motion to vacate convictions for two reasons: (1) the trial court assessed the witnesses' credibility without addressing the remaining statutorily mandated IPA factors, and (2) the trial court impermissibly made credibility findings based on minor inconsistencies. Discerning no abuse of discretion, we affirm.

**I.**

---

[1] Appellant was convicted of obstruction of justice, D.C. Code § 22-722 (a)(4) (1996); conspiracy to commit murder and obstruction of justice, D.C. Code §§ 22-105a, -722, -2401, -3202, 3204 (1996); first-degree premeditated murder while armed, D.C. Code §§ 22-2401, -3202; possession of a firearm during the commission of a crime of violence, D.C. Code § 22-3204 (b); and carrying a pistol without a license, D.C. Code § 22-3204 (a).

[2] *McCullough v. United States*, 827 A.2d 48 (D.C. 2003).

[3] D.C. Code § 22-4135 (2012 Repl.).

The IPA provides that "[a] person convicted of a criminal offense in the Superior Court of the District of Columbia may move the court to vacate the conviction or to grant a new trial on grounds of actual innocence based on new evidence."[4] On March 30, 2012, appellant filed a *pro se* motion for a new trial alleging actual innocence based on newly discovered evidence. Appellant submitted two affidavits in support of his request, one from a purported alibi witness, Larry Bradley, and one from appellant himself. The trial court subsequently appointed counsel for appellant and scheduled an evidentiary hearing.

In 1997, appellant and his co-defendant, Michael McCullough, learned that Sharon Jackson had "snitched on [Elliot] Wallace and [Andrew] Tillman" by cooperating with investigators on an open homicide case.[5] "After confirming that Jackson had indeed gone to the police" to cooperate, appellant and his co-defendant "decided that the best thing to do was to kill Jackson."[6] On December 1,

---

[4] D.C. Code § 22-4135 (a).

[5] *McCullough*, 827 A.2d at 54.

[6] *Id.*

1997, Jackson was shot four times in front of an apartment building located on 1527 Park Road, N.W., Washington, D.C.[7] Immediately after the shooting, Mack Williams, appellant's father, who was in the basement apartment at the time of the shooting, "heard [appellant's] voice in the area of the shooting urging someone to hurry as he fled and then saw his son leave through the backdoor of the apartment building, get into a car with another person, and leave the area."[8] Both appellant's father, as well as appellant's brother, testified to hearing appellant discuss Jackson's impending death in the week prior to the shooting.[9]

Bradley testified, consistently with his affidavit, that in the evening hours of December 1, 1997, he was in the front passenger seat of a car parked in the alley of 14th Street and Park Row in between 14th Street and Monroe Street in Northeast Washington, D.C., drinking alcohol with a friend. While he was in the car, he saw a man known as Mikey-D come out of the back of the building and get into a vehicle in the alley. Shortly thereafter, Bradley saw appellant, who he knew as Mackavelli Love, come out of the same building and walk toward Mikey-D's

---

[7] *Id.*

[8] *Id.*

[9] *Id.*

vehicle.[10] Bradley then observed appellant making what Bradley believed to be a drug transaction. While observing the transaction, Bradley heard gunshots. Immediately thereafter, appellant jumped into the vehicle with Mikey-D and "pulled off" out of the alley while "the individual that [appellant] was serving[] ran down the alley." Moments later, Bradley saw Travis Singleton and a man known as "Marcelle" running three or four feet in front of the car in which Bradley was sitting with his friend. Singleton was armed with a gun in his hand, and it also appeared that Marcelle was running with a gun, although Bradley could not definitively see a gun in Marcelle's possession.

A few days after the shooting, Bradley saw Singleton and Marcelle "in a poolroom on Park Row." Bradley inquired "what was all that about in the alley," to which Singleton allegedly responded, "Sharon set him up to get robbed, and so that's why he killed the bitch."[11] Bradley further testified that, after running into Singleton in the pool hall, he sought out appellant and went to appellant's father's home, asking "his father to tell [appellant's] lawyer" to contact him. Bradley, however, was never contacted regarding what he saw or heard on December 1,

---

[10] Bradley considered appellant a friend because they grew up in the same neighborhood.

[11] Bradley testified that Singleton is now deceased.

1997. In 2011, Bradley and appellant were both incarcerated at a penitentiary in Coleman, Florida where Bradley told appellant what he had witnessed. Bradley subsequently provided appellant with an affidavit attesting to what he saw in the alley on December 1, 1997. Bradley's testimony was consistent with appellant's.

The trial court did not credit appellant's and Bradley's testimonies and ultimately found it was "unable to conclude either that there is clear and convincing evidence of [appellant's] innocence or that it is more likely than not that he is actually innocent." In the absence of credible evidence, the trial court denied appellant's IPA motion. This timely appeal followed.

## II.

To obtain relief under the IPA, "appellant must prove by clear and convincing evidence that [he] is actually innocent of the crime."[12] In considering the motion for a new trial based on actual innocence, "the trial court may consider any relevant evidence, but shall consider the following: (A) The new evidence; (B) How the new evidence demonstrates actual innocence; [and] (C) Why the new

---

[12] *Meade v. United States*, 48 A.3d 761, 766 (D.C. 2012) (quoting D.C. Code § 22-4135 (g)(3)) (brackets in original) (internal quotation marks omitted).

evidence is or is not cumulative or impeaching."[13]   Also, the statute provides in

subsection (D) that "[i]f the conviction resulted from a trial, and if the movant

asserted a theory of defense inconsistent with the current claim of innocence," the

court must consider "the specific reason the movant asserted an inconsistent theory

at trial."[14]   "If, after considering those factors, the court concludes that it is more

likely than not that the movant is actually innocent of the crime, the court shall

grant a new trial."[15]

We review the denial of a motion to vacate under the IPA for abuse of

discretion,[16] giving "great deference to the trial court's role as the trier of fact on

the ultimate issue of 'actual innocence' under the IPA."[17]   "[T]hus[,] we apply the

clearly erroneous standard of review to the trial judge's rejection of alleged newly

---

[13]   *Caston v. United States*, 146 A.3d 1082, 1089-90 (D.C. 2016) (quoting D.C. Code § 22-4135 (g)(1)(A)-(C)) (internal quotation marks omitted).

[14]   D.C. Code § 22-4135 (g)(1)(D); *see also* § 22-4135 (g)(1)(E) ("If the conviction resulted from a guilty plea, the specific reason the movant pleaded guilty despite being actually innocent of the crime.").

[15]   *Caston*, 146 A.3d at 1090 (quoting D.C. Code § 22-4135 (g)(2)) (internal quotation marks omitted).

[16]   *Veney v. United States*, 936 A.2d 811, 822 (D.C. 2007).

[17]   *Richardson v. United States*, 8 A.3d 1245, 1249 (D.C. 2010) (citation omitted).

discovered evidence offered to prove 'actual innocence.'"[18]  As such, "the scope of our review is narrow[ ] on the question . . . [of] whether that [new] evidence establishes appellant's 'actual innocence.'"[19]  However, "[w]hether the court applied the correct legal standard [in ruling on an IPA motion] is a question of law that we consider de novo."[20]

## III.

Relying on this court's decision in *Caston v. United States*,[21] appellant first suggests that the trial court "failed to analyze the new evidence according to the statutorily mandated factors" because it "ended its inquiry after finding Bradley and [appellant] not credible."  Appellant's reliance on *Caston* is misplaced.  In *Caston*, we found error because the trial court's consideration of the new evidence, *i.e.*, its credibility assessment of testimony from a new, alleged eyewitness,

---

[18]  *Caston*, 146 A.3d at 1090 (citation omitted).

[19]  *Id.* (citation omitted).

[20]  *Mitchell v. United States*, 80 A.3d 962, 971 (D.C. 2013).

[21]  146 A.3d 1082 (D.C. 2016).

"depended upon the judge's assessment of [appellant's] credibility."[22]   In other words, the trial court found the appellant's testimony to be so incredible that it tainted even the credibility of the new witness supporting the appellant's innocence.   Here, to the contrary, appellant does not assert that the trial court's credibility assessment of Bradley was tainted by its credibility evaluation of appellant, and we perceive no such improper assessment in our review of the record.   Rather, unlike the trial court in *Caston*, the IPA court here made wholly independent credibility assessments of both appellant's and Bradley's testimonies — assessments fully within its purview of permissible considerations in evaluating whether the new evidence demonstrated actual innocence.[23]

## IV.

Without regard to *Caston*, appellant faults the trial court for failing to address, methodically, the statutorily mandated factors for resolution of an IPA claim.[24]   As to each, appellant stresses that:   (A) the new evidence (Bradley's

---

[22]   *Id.* at 1100 (quoting *Bouknight v. United States*, 867 A.2d 245, 257-58 (D.C. 2005)).

[23]   *See* D.C. Code § 22-4135 (g)(1)(B).

[24]   See text accompanying *supra* notes 13 and 14.

testimony) revealed that appellant could not have been in the apartment at the time of the shooting because he was in the back alley of the building at that time conducting a drug transaction; (B) Bradley's testimony demonstrated that appellant could not have been one of the shooters; (C) Bradley's testimony was not cumulative or impeaching; and (D) this new testimonial evidence was consistent with appellant's defense at his 1999 trial.

Contrary to appellant's contention, we are not convinced that the trial court's inquiry needs to proceed any further once the court considers the new evidence and finds all of it, in all material respects, incredible.[25] In any event, we can perceive no prejudice where, as here, there is no new evidence (claimed to demonstrate actual innocence) which has not been substantially discredited. In discrediting Bradley's and appellant's testimonies, the court sufficiently addressed factors (A) and (B) and, as a result, mooted factors (C) and (D) as irrelevant.

Appellant's IPA claim, therefore, turns on whether the trial court's ultimate

---

[25] *See Bell v. United States*, 871 A.2d 1199, 1202 (D.C. 2005) ("In other words, if the judge reasonably finds the recantation to be not credible, that determination properly ends the inquiry into whether the movant has met his burden of showing that he was in fact innocent.") (internal citation and quotation marks omitted).

finding — that Bradley's testimony was not credible — is sustainable. Under the IPA,

> [i]t cannot be gainsaid that the ultimate responsibility to determine [a witness's] credibility and whether appellant is more likely than not actually innocent lies with the Superior Court judge, and that the Superior Court judge's factual findings anchored in credibility assessments derived from personal observations of the witnesses [are] beyond appellate reversal unless those factual findings are clearly erroneous.[26]

"This accords with the usual rule in an appeal from a bench trial that [a]n appellate court will not redetermine the credibility of witnesses where, as here, the trial court had the opportunity to observe their demeanor and form a conclusion."[27] We consider in turn each of the trial court's findings that contributed to its ultimate credibility determination.

*First*, the court questioned Bradley's purported vantage point during the

---

[26] *Caston*, 146 A.3d at 1099 (quoting *Hill v. United States*, 664 A.2d 347, 353 n.10 (D.C. 1995)) (internal quotation marks omitted).

[27] *Turner v. United States*, 116 A.3d 894, 927 n.94 (D.C. 2015), *aff'd*, 137 S. Ct. 1885 (2017) (citations and internal quotation marks omitted). *Accord David v. United States*, 957 A.2d 4, 8 (D.C. 2008) ("This court will not substitute its judgment for that of the fact-finder when it comes to assessing the credibility of a witness . . . based on factors that can only be ascertained after observing the witness testify.") (alterations in original) (citation and internal quotation marks omitted).

shooting based on his testimony that the gunshots came from his right. In comparing this testimony to the undisputed evidence at trial that Jackson was shot in front of 1527 Park Road, the trial court noted that if Bradley had been in the area of the alley as he attested, "the gunshots would have come from his left and not his right."

*Second*, the court discredited Bradley's account of Singleton's and Marcelle's alleged path after the shooting. The trial court found that it "strains credulity to believe that the shooters shot [Jackson] in front of 1527 Park Road, then fled down Park Road to the left in front of the witnesses and exited into the rear alley behind Park Road[,] only to then flee out of the alley towards 16th and Monroe Streets."

*Third*, the trial court did not find Bradley's exoneration of appellant credible, given the trial testimony of appellant's half-brother, Raymond Harris, that appellant had told him that appellant and others would have to "bust off" Jackson for snitching, which Harris interpreted to mean shoot her.[28]

---

[28] During the IPA proceeding, appellant never asserted that the trial court erred in accepting Harris's interpretation of the phrase "bust off," nor did his counsel ever contest the trial court's consideration of the Harris testimony. Indeed, during a discussion with the trial court about Harris's testimony, appellant's

(continued . . .)

*Finally*, appellant's father, Mack Williams, had testified at trial about hearing the sound of footsteps above him in apartment 102, then gunshots, then his son's voice saying, "Come on, come on, let's get out of here." As the trial judge who had heard that testimony (which the jury credited), Judge Greene was unpersuaded by Bradley's IPA testimony that appellant had been outside the apartment, pursuing a drug deal, at the time of the shooting.[29]

Consistent with the trial court's findings, we agree that none of the contradictions or inconsistencies between Bradley's testimony and the evidence at trial "are minor"; nor do they "pertain to inconsequential matters" that may be

_____

(. . . continued)

counsel advised the court: "I think I would lose all credibility in this courtroom if I didn't acknowledge that it was important evidence." Reviewing for plain error, we find none here.

[29] Appellant alleges that the trial court failed to weigh the "shortcomings" of the government's case, particularly Mack Williams's testimony, in light of Bradley's evidence. As the judge at both appellant's trial and his post-conviction proceeding, Judge Greene was well aware of any weakness in Mack Williams's testimony; *cf. Caston*, 146 A.3d at 1099 (noting that post-conviction proceeding trial judge did not preside over appellant's original trial). Moreover, in making his findings at the conclusion of the IPA hearing, Judge Greene stated, "I have also reviewed my trial notes in this case," and read from those notes during discussions with both parties.

"explainable."[30] Thus, we cannot say that the trial court, after observing and hearing Bradley testify, clearly erred in disbelieving him. To the contrary, the trial court's credibility determination is well supported by the record.

Specifically, in considering Bradley's testimony, the trial court identified more than a few reasons to question his story, in addition to the reasons outlined above: (1) the fact that Bradley and appellant had been fellow inmates for a number of years and had a long-lasting friendship, giving Bradley a "strong reason to be biased . . . in favor of [appellant]"; (2) that despite their being friends for over twenty years, Bradley could not locate appellant until they were incarcerated in the same prison because he knew appellant only by his nickname, even though Bradley knew appellant's family; (3) that in addition to Bradley's prior convictions, he admitted his use of PCP within days of the shooting; (4) that Bradley's statement he had not visited the alley prior to testifying at the hearing was untruthful; and, finally, (5) that Bradley's admission he had been drinking alcohol at the time of the

_____

[30] *Caston*, 146 A.3d at 1096; *cf. id.* at 1097-98 (highlighting the "unimportant facts" the trial court improperly relied upon in making its credibility determination, including hearing testimony that the shooting occurred at night while an affidavit by the witness attested that the shooting occurred between 10 a.m. and 12 p.m. without accounting for the "common mistake of transposing a.m. for p.m.") (footnote and internal quotation marks omitted); *Fatumabahirtu v. United States*, 148 A.3d 260, 267 n.10 (D.C. 2016) (seeking clarity from the trial court as to whether it considered the witnesses' lack of English fluency in identifying discrepancies between witness testimony and sworn affidavits).

shooting suggested questions about "his recollection of the events he purportedly saw."

In light of the trial court's conscientious and comprehensive analysis, we are well satisfied that there was no abuse of trial court discretion.

**V.**

For the foregoing reasons, the judgment of the Superior Court is

*Affirmed.*